(61 App. Div. 279.)

BRENNAN v. ALBANY & GREENBUSH BRIDGE CO.

(Supreme Court, Appellate Division, Third Department. May 8, 1901.)

OPEN DRAW—CONTRIBUTORY NEGLIGENCE.

Plaintiff's intestate was crossing a drawbridge on a dark night. The draw was opened, and gates were closed to prevent passengers on the footpath from going into the river. The bridge lights were all turned on the center driveway, and the river below was dark. After a boat had passed, the gates were opened before the draw was closed, and plaintiff's intestate stepped into the river, and was drowned. Other witnesses saw that the draw was not closed, and stopped suddenly when the accident occurred. Held, that plaintiff's intestate was not guilty of contributory negligence as a matter of law.

Appeal from trial term, Albany county.

Action by Mary Brennan, as administratrix of James Brennan, deceased, against the Albany & Greenbush Bridge Company. From a judgment of nonsuit, plaintiff appeals. Reversed.

Plaintiff's action is for negligence. The defendant is an incorporated bridge company, owning and operating a toll bridge crossing the Hudson river between Albany and Rensselaer. In this bridge is a draw, which opens for the passage of boats. When the draw is opened, gates are closed both upon the driveway and the footway for the purpose of preventing passengers from going into the river. Upon the 9th day of September, 1899, about 9 p.m., James Brennan, the plaintiff's intestate, was walking from Rensselaer to Albany upon the north foot passage of the bridge. When he came to the draw, he found it open, and the gate closed. He stopped by the gate until the boat had passed and the gate was opened by the bridge tender. He then started forward, fell into the river, and was drowned. The gates had been opened before the draw was completely closed. To recover damages for the death caused by this negligence on the part of the defendant company, this action is brought. At the close of plaintiff's case, defendant's motion for a nonsuit was granted, and from the judgment entered upon this direction of the trial court this appeal is taken.

Further facts appear in the opinion.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, and SMITH, JJ.

John F. Wolfe, for appellant.

Randall J. La Boeuf, for respondent.

SMITH, J. The negligence of the defendant is unquestioned. The opening of the gates before the closing of the draw rendered dangerous a passageway which defendant was bound to protect.

The contributory negligence of the deceased is the sole issue. The trial court has held that his conduct was negligent as matter of law. Of this ruling the appellant complains.

In Palmer v. Railroad Co., 112 N. Y. 234, 19 N. E. 678, the plaintiff's intestate had approached a crossing at which there were gates, which were left open. He started to cross the track, and was struck by an engine which had approached the crossing· without signal. Upon appeal the main question argued was the contributory negligence of the deceased. Danforth, J., in writing for the court, says:

"The duty of the company was imperative, and it is obvious that an open gate was a direct and explicit assurance to the traveler that neither train nor engine was rendering the way dangerous; that none was passing. A closed gate was an obstruction· preventing access to the road; an open gate was equally positive in the implication to be derived from it that the way was safe. Nothing less could be implied, and no other conclusion could be drawn, from that circumstance. The silence of the bell and whistle was an indication that no train or locomotive was ·within eighty rods of the crossing; the open gate an affirmative and explicit declaration and representation that neither train nor locomotive was approaching with intent to· pass."

Upon page 242, 112 N. Y., and page 680, 19 N. E., the court further says:

"When, therefore, he moves on upon the track under an assurance of safety from those owning it, and from their servants, whose special duty it is to keep their attention fixed upon it, and who have within their power the means of avoiding the infliction of injury, and whose business it is to use them so as to prevent danger, it is for the jury to say whether the traveler exercised that ordinary care and prudence which, under the circumstances, it would be natural to expect."

This doctrine is reiterated in Oldenburg v. Railroad Co., 124 N. Y. 418, 26 N. E. 1021. In Tousey v. Roberts, 114 N. Y. 312, 21 N. E. 399, the door of an elevator had been thrown open. The plaintiff had proceeded to step upon the elevator, and had fallen down an empty shaft. In the opinion in that case it is said:

"An elevator for the carriage of persons is not, like a railroad crossing at a highway, supposed to be a place of danger, to be approached with great caution; but, on the contrary, it may be assumed, when the door is thrown open by an attendant, to be a place which may be safely entered without stopping to look, listen, or make a special examination."

The bridge in question presented no special danger which called for the exercise of an unusual vigilance upon the part of a passenger. With a closed draw, the way was safe. When the draw was open, the way was still safe, because the gates were closed. The defendant, by requirement of law, maintained these gates, closing them when the draw was open, and opening them after the draw was· closed. Upon the night in question, then, the plaintiff's intestate might lawfully assume, when those gates were opened, that the danger had passed; and, while he was still required to exercise ordinary care, the law required of him no special care to see that his way was safe, and he was entitled to rest somewhat upon the assurance that the defendant had not opened the gate until a safe passageway had been restored.

The argument of the respondent is that, notwithstanding the open gate, it was obvious that the draw was not then closed, and that

the plaintiff's intestate must have seen, or should have seen, the danger, and have avoided it. It will probably not be contended that plaintiff's intestate did in fact see the danger, and deliberately court death. This, at least, will not be presumed. Should he have seen the danger? It appears from the evidence that most of the plaintiff's witnesses who were present upon that night did in fact see that the draw had not been closed. From this defendant argues that the plaintiff's intestate should have noticed this fact. How the witness saw that the draw was still open is not shown. It is nowhere sworn that from the footpath of the bridge any danger was apparent. The night was very dark. There was no moon. The lights were all turned to the driveway of the bridge in the center. One witness swears that in going towards Albany your eyes were dazzled by the Albany lights. After the boats had passed, the river below was dark. No chasm appeared before plaintiff's intestate into which he was stepping. The jury might well have inferred that the knowledge by these witnesses of the situation of the draw was by noticing the superstructure. Can it be ruled as matter of law that plaintiff's intestate should have had his eye upon that superstructure of the draw? Then, too, to what extent they "sensed" the situation before Brennan walked off is not clear. That it was not fully realized would seem to be indicated by the fact, as sworn to by one witness, that immediately when the gate was opened they all started on, and only stopped when some one called that the man had gone over. The horror of the accident undoubtedly quickened their realization of the situation. Can it be said, then, that plaintiff's intestate, a man 70 years of age, should, as matter of law, have realized the danger, and avoided it? In open daylight an open gate may not always be a guarantor of safety. Upon that dark night, however, we think that plaintiff's intestate might reasonably accept the assurance of safety tendered him by the opening of the gate, and a jury only could charge him with negligence therefor. The ruling of the court that he was guilty of negligence was therefore unauthorized.

Judgment reversed, and new trial granted, with costs to appellant to abide event. All concur.